**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TINA CORA, | ) |
| | ) No. 24 CV 1129 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| LAKE COUNTY, ILLINOIS, and | ) |
| LAKE COUNTY SHERRIFF'S | ) |
| OFFICE, | ) |
| | ) July 7, 2026 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff Tina Cora alleges that Defendants failed to reasonably accommodate her disability, retaliated against her after she sought worker's compensation, and intentionally caused her to suffer emotional distress resulting in physical illness, reputational harm, and loss of income. In support of her claims, Cora's experts, Dr. Lama Bazzi and Elizabeth Wheeler, produced expert reports addressing Cora's psychiatric state and employability, respectively, based on their remote video examinations of Cora. Before the court is Defendants' motion to compel Cora to submit to Defendants' experts' mental and physical examinations to take place in person. For the following reasons, the motion is granted:

**Background**

Defendants hired Cora in February 2014 as a Grade 1 Deputy in highway patrol and transferred her in October 2020 to a Grade 1 Deputy with the Crisis Outreach and Support Team ("COAST"). (R. 49, Third Am. Compl. ("TAC") ¶ 11.) In

February 2022 Cora slipped and fell on black ice while at work and had to seek medical treatment. (Id. ¶¶ 12-13.) She returned to light duty, no more than four hours per day, at the suggestion of Dr. Bradley Bagan, the neurosurgeon to whom worker's compensation referred her. (Id. ¶¶ 14-16.) Cora received medical treatment for chronic neck and back pain for the following year, which she says worsened over time, but worker's compensation refused to pay for her recommended surgery or follow-up medical visits. (Id. ¶¶ 43, 62-63.)

In February 2023 Cora paid for a follow-up visit with Dr. Bagan, who scheduled spinal surgery and recommended full remote work. (Id. ¶ 62.) But Defendant Lake County ("County") refused to accommodate Cora's request for remote work and instead terminated her worker's compensation benefits. (Id. ¶ 63.) That same day, Cora attempted suicide. (Id. ¶¶ 66-67.) At her supervisor's request, the Illinois State Police Office of Firearms Safety ("ISP") then revoked Cora's FOID card. (R. 77, Defs.' Sealed Mot., Ex. E, Wheeler Rep. at 8.)[1]

Cora underwent spinal surgery as scheduled in March 2023, but her physicians expressed doubt that she could return to law enforcement duties. (Id. at 8-9; R. 49, TAC ¶¶ 44-46.) The County terminated Cora in May 2023. (R. 49, TAC ¶¶ 29, 48.) Since then, she has been unable to secure another law enforcement position and began working as a Walmart stocker in June 2025. (R. 77, Defs.' Sealed Mot., Ex. E,

---

[1] The court granted Defendants' motion for leave to file under seal its Rule 35 motion, (R. 79; see also R. 78, Defs.' Mot. for Leave), and discloses sealed information only to the extent necessary to explain the court's ruling.

Wheeler Rep. at 3.) Cora seeks damages for emotional distress and lost wages. (R. 49, TAC ¶¶ 34, 49, 76.)

Cora retained Dr. Bazzi, a forensic psychiatrist based in New York, to evaluate her symptoms and the circumstances that may have caused her mental health emergency and PTSD. (R. 84, June 2, 2026 Mem. Op. and Order at 2.) Dr. Bazzi conducted a 90-minute remote forensic interview with Cora, rendering opinions regarding Cora's symptoms in her first expert report, and then administered to Cora two tests remotely, providing additional opinions in her second report. (Id.) Dr. Bazzi concludes that Defendants' discrimination, harassment, and handling of Cora's worker's compensation caused her mental health emergency and PTSD. (Id.; R. 77, Defs.' Sealed Mot., Ex. C, Bazzi First Rep. at 1.)

Cora also retained Wheeler, a vocational expert based in Louisiana, to evaluate Cora's lost benefits and income, as well as Defendants' alleged discrimination, harassment, and failure to accommodate Cora's disability. (See generally R. 77, Defs.' Sealed Mot., Ex. E, Wheeler Rep.) Wheeler conducted two remote interviews with Cora regarding her education, work history, medical conditions, functional limitations, accommodation history, and post-termination vocational efforts, and also relied on documents concerning Cora, including her medical records, employment records, earning records, worker's compensation records, and pleadings and other discovery produced in this case. (Id. at 1-2.) Wheeler did not conduct any mental or physical testing to evaluate Cora's vocational capacity. (R. 88, Defs.' Reply at 3.)

Wheeler opines that Cora suffers a permanent loss of earning capacity because she is "unlikely" to be able to seek reemployment in law enforcement because of her inability to carry a firearm, medical restrictions, and circumstances leading to her termination. (R. 77, Defs.' Sealed Mot., Ex. E, Wheeler Rep. at 15-16.) Wheeler also quantified Cora's lost income and concluded that Cora is limited to "significantly lower-paying employment" in alternate positions such as stock clerk, office helper, unarmed security guard, or surveillance system monitor. (Id. at 16.)

Defendants ask the court to compel Cora to appear in person so that their forensic psychiatrist, Dr. Richard Cockerill, and vocational rehabilitation expert, Jason Purinton, can perform Rule 35 examinations of her at their Chicago offices. (R. 80, Defs.' Mot. at 1.) Defendants propose that Dr. Cockerill conduct a three-hour examination, including a psychiatric interview and Clinician-Administered PTSD Scale for DSM-5 ("CAPS-5") test. (Id. at 3.) They also propose that Purinton conduct a five-hour oral interview and "standardized psychometric testing," including the following: (1) Wide Range Achievement Test ("WRAT5"); (2) Beta-4; and (3) COPSystem VIA. (Id.)

Cora does not object to Dr. Cockerill's examination of her but says it should take place remotely. (R. 81, Pl.'s Resp. at 1-2.) She objects to Purinton's "psychometric" testing as duplicative and cumulative of Dr. Cockerill's testing and argues that Purinton is not qualified to administer it. (Id. at 2-3.) Cora further objects to Purinton's oral interview because, according to her, vocational examinations are not within Rule 35's scope and in any event, he can render his

4

opinions after reviewing documents. (Id. at 3-4.) Defendants insist that both examinations must take place in person. (R. 88, Defs.' Reply at 1-4.)

**Analysis**

Rule 35 permits a court to order a party's physical or mental examination when the movant shows that: (1) the party's mental or physical condition is in controversy; and (2) there is good cause for the examination. *Walti v. Toys R Us*, No. 10 CV 2116, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011) (citing Fed. R. Civ. P. 35(a)(1)-(2)(A)). Good cause requires "a greater showing of need than the relevancy already indicated by Rule 26(b) and can be gauged by the ability of the movant to obtain the desired information by other means." *Klein v. Cnty. of Lake*, No. 18 CV 349, 2022 WL 2603557, at *1 (N.D. Ind. July 8, 2022) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964)). "Whether to order an examination under Rule 35(a), and the parameters of any such exam, are within the district court's sound discretion." *Ledesma v. Marriott Int'l, Inc.*, No. 18 CV 3947, 2023 WL 12201571, at *1 (N.D. Ill. Feb. 1, 2023) (citations omitted). The court turns first to the propriety of each proposed examination before addressing Defendants' request that they proceed in person.

## A.    Psychiatric Examination

Cora does not object to Dr. Cockerill's psychiatric examination and concedes that she has put her physical and mental conditions at issue. (R. 81, Pl.'s Resp. at 1.) Despite this concession, Defendants must still show that Dr. Cockerill's proposed psychiatric examination meets Rule 35's "in controversy" and "good cause"

5

requirements. Fed. R. Civ. P. 35(a)(1)-(2)(A); *see Walti*, 2011 WL 3876907, at *2 (evaluating Rule 35's requirements even when the plaintiff did not contest them). The court finds that Defendants have met their burden.

First, Defendants have shown that Cora's mental condition is in controversy. While a claim for emotional distress does not automatically "open[] the door to a Rule 35 examination," *Haymer v. Countrywide Bank, FSB*, No. 10 CV 5910, 2013 WL 657662, at *4 (N.D. Ill. Feb. 22, 2013), courts have found a party's mental condition in controversy where one or more of the following is present: "1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)," *Nolan v. Int'l Bhd. of Teamsters Health & Welfare & Pension Funds, Loc. 705*, 199 F.R.D. 272, 275 (N.D. Ill. 2001) (citation and quotation omitted). Each of these factors is present in this case.

For factors 1 and 5, Cora alleges a claim for intentional infliction of emotional distress, (R. 49, TAC ¶¶ 50-76), and has conceded that her mental condition is in controversy—namely, that Defendants' actions caused her to suffer mental injuries resulting in a loss of benefits, income, and life enjoyment, (R. 81, Pl.'s Resp. at 1; R. 49, TAC ¶¶ 32-34, 49); *see also Walti*, 2011 WL 3876907, at *2 (finding in controversy a party's mental condition where the party conceded as much and where recovery for psychological injuries was "a major component of [his] damages claim").

6

For factors 2 and 3, Cora alleges in relevant part that Defendants caused her severe emotional distress resulting in an attempted suicide and PTSD, the effects of which (*e.g.*, revocation of Cora's FOID card and Defendants' termination) prevent Cora from securing commensurate employment. (R. 49, TAC ¶¶ 66-67; R. 77, Defs.' Sealed Mot., Ex. E, Wheeler Rep. at 9, 14-16.) Furthermore, Cora placed her mental condition in controversy by retaining Dr. Bazzi to opine on the causes of her emotional distress, satisfying factor 4. *See Haymer*, 2013 WL 657662, at *4 (finding in controversy a party's mental condition where the party retained a mental health expert).

Moreover, good cause exists for Dr. Cockerill's psychiatric examination. First, Defendants should be afforded an opportunity to evaluate the mental injuries that underlie her claims. While "mere conclusory allegations of the pleadings" do not satisfy Rule 35's requirements, the pleadings alone may establish good cause "to determine the existence and extent" of a requisite injury. *Schlagenhauf*, 379 U.S. at 119-20 (noting that, for example, a "plaintiff in a negligence action who asserts mental or physical injury, . . . provides the defendant with good cause for an examination to determine the existence and extent of each asserted injury"). Here, good cause exists for Defendants to examine the extent of Cora's symptoms because she alleges that Defendants' conduct caused her to suffer severe emotional distress and resultant harm. (R. 49, TAC ¶¶ 32-34, 47-49, 69-76); *see Fuller v. Wilkie*, No. 19 CV 1325, 2020 WL 11269899, at *1 (N.D. Ill. Dec. 7, 2020) (finding good cause for mental examination where the party's "mental illnesses and their connection to her

7

employment [were] central to the dispute (both liability and damages)"); *Does 1-5 v. City of Chi.*, No. 18 CV 3054, 2019 WL 2076260, at \*2 (N.D. Ill. May 10, 2019) (same).

Second, Defendants should have a "reasonable opportunity to test" and rebut Dr. Bazzi's testimony regarding the causes for Cora's emotional distress. *Does 1-5*, 2019 WL 2076260, at \*2; *see also Haymer*, 2013 WL 657662, at \*4 (finding good cause because the defendant "should have an opportunity to rebut" the plaintiff's expert testimony); *Walti*, 2011 WL 3876907, at \*3 (same); *Fuller*, 2020 WL 11269899, at \*1 (same). Third, Defendants cannot obtain this information from another source because Defendants propose a psychiatric examination (*e.g.*, CAPS-5) and oral interview that differ from Dr. Bazzi's evaluation. (Compare R. 80, Defs.' Mot. at 3 (identifying Dr. Cockerill's proposed examination) with R. 84, June 2, 2026 Mem. Op. and Order at 2-3 (summarizing Dr. Bazzi's examination)); *see also Haymer*, 2013 WL 657662, at \*4 (finding good cause for mental examination because the defendant could not otherwise obtain this information, as the plaintiff's expert did not administer the same tests). Accordingly, Cora's mental condition is in controversy, and good cause exists for Dr. Cockerill's psychiatric examination.

The court also finds that such examination should proceed in person at Dr. Cockerill's Chicago office. Cora says this examination should proceed remotely because an in-person examination is intrusive, and her own experts administered their examinations remotely. (R. 81, Pl.'s Resp. at 2-3.) But while Rule 35 does not specify where an examination must occur, generally a plaintiff must submit to an in-person examination in the place where they filed suit absent the plaintiff's showing

8

of a compelling or substantial reason for the examination to proceed elsewhere. *Rodriguez v. Gusman*, 974 F.3d 108, 115 (2d Cir. 2020) ("Usually, [the] plaintiff will be required to come to the place where he or she filed suit for the examination, in the absence of facts showing substantial reasons for insisting upon examination at [his or her] residence" (quoting 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2234 (3d ed. 2010))); *Roberts v. Res-Care Inc.*, No. 18 CV 231, 2020 WL 12654310, at *6 (S.D. Ind. May 6, 2020); *see also, e.g.*, *Guzman v. Assic Trucking Co.*, No. 24-11817, 2025 WL 3852267, at *2 (E.D. Mich. Sept. 15, 2025); *Doe v. Missionary Oblates of Mary Immaculate E. Province*, No. 22 CV 381, 2023 WL 7282683, at *4 (D. Me. Nov. 3, 2023); *Six v. City of Seattle*, No. 21 CV 658, 2022 WL 11229094, at *3 (W.D. Wash. Oct. 19, 2022); *Carroll v. Genesis Marine, LLC*, No. 19 CV 13512, 2021 WL 1784644, at *8 (E.D. La. May 5, 2021). Exceptions to this general rule may include "undue burden or hardship" travel imposes, *Roberts*, 2020 WL 12654310, at *6; *see, e.g.*, *Guzman*, 2025 WL 3852267, at *6 (where travel would be injurious to health); *Aglogalou v. Dawson*, No. 20 CV 2024, 2021 WL 8742833, at *2 (M.D. Fla. July 29, 2021) (where the party cannot pay for travel expenses); *Stephens v. FAF, Inc.*, No. 18 CV 006, 2018 WL 7288582, at *2 (W.D. Tex. June 21, 2018) (where the distance to the proposed examination location is unreasonable), or any other circumstance the court deems substantial or compelling, *see, e.g.*, *Rodriguez*, 974 F.3d at 115 (where the plaintiff was legally barred from reentering the United States).

9

Cora has not established that the intrusiveness of Dr. Cockerill's examination justifies deviating from the general rule that a plaintiff must appear for a Rule 35 examination in the location where she filed suit. Cora cites *Fuller*, 2020 WL 1126989, at \*2, for the general proposition that "Rule 35 examinations are intrusive," and suggests that a remote examination would make Dr. Cockerill's examination "less intrusive." (R. 81, Pl.'s Resp. at 2.) But Cora identifies no facts or legal authority to support this objection and it therefore does not provide a substantial or compelling reason for this court to deviate from the general rule. *See, e.g.*, *Mitkish v. Target Corp.*, No. 23 CV 4453, 2024 WL 1494583, at \*3 (E.D.N.Y. April 4, 2024) (ordering an in-person examination within the district because the plaintiff proffered no support or explanation for location objection); *Levick v. Steiner Transocean Ltd.*, 228 F.R.D. 671, 672 (S.D. Fla. 2005) (finding generalized objections to the location of a Rule 35 examination did not justify "setting aside the general rule" absent the plaintiff's specific showing of a compelling reason or hardship); *Six*, 2022 WL 11229094, at \*3 (same); *see also Walti*, 2011 WL 3876907, at \*7 (finding that the "potentially intrusive nature of a psychological examination" did not constitute prejudice sufficient to deny a Rule 35 examination request). There is no dispute that the matters to be examined are intrusive, but Cora opened herself up to this intrusion when she filed this lawsuit and alleged the types of injuries she says she suffers.

Nor is the fact that Cora's experts chose to evaluate her remotely a basis to order a remote examination. Rather, given the complexity of her mental injuries, Dr. Cockerill should be afforded the opportunity to "examine [Cora] in a controlled

10

environment" so that he may "rely on his full range of senses to observe and evaluate [her]" as Defendants request. (R. 88, Defs.' Reply at 1-2); *see Duncan v. Manning*, No. 13 CV 0437, 2015 WL 13758526, at *2 (E.D. Wis. Aug. 31, 2015) (ordering in-person examination because "[b]ehavioral nuances may be lost in [a remote] examination, and [the defendant's expert] would not be able to control the conditions as he may need to"); *Missionary Oblates*, 2023 WL 7282683, at *4 (rejecting the plaintiff's request for remote examination because "the complexity of Doe's alleged mental injuries justifie[d] an in-person examination"). Moreover, Cora does not allege that traveling a short distance from her home in Shorewood, Illinois, to Dr. Cockerill's Chicago office imposes any undue burden or hardship. *See McDonald v. Southworth*, No. 07 CV 217, 2008 WL 2705557, at *6 (S.D. Ind. July 10, 2008) (ordering the plaintiff to travel from Arkansas to the district for examination because the plaintiff failed to demonstrate specific burden or hardship); *Guzman*, 2025 WL 3852267, at *2 (ordering the plaintiff to travel from Georgia to the district for examination because the plaintiff did not allege "that a physician [] recommended against travel []or that [the p]laintiff w[ould] suffer injury or significant pain if required to travel back to Michigan for an examination").

The court finds it reasonable to require Cora to travel roughly 50 miles from Shorewood to Chicago for Dr. Cockerill's examination, especially given that she appears to have traveled more than 60 miles from her home to see her treating physician, Dr. Bagan, in Libertyville, Illinois. *See Sanders v. Cangiolosi*, No. 17 CV 8563, 2021 WL 1121084, at *2 (N.D. Ill. March 24, 2021) (ordering that defendants

11

select an examiner within 100 miles from the plaintiff's home); *Tokarz v. Ventaire Corp.*, No. 03 CV 149, 2006 WL 8452391, at \*2 (N.D. Ind. May 24, 2006) (ordering the plaintiff to submit to the defendants' chosen experts' examinations in Chicago and not within the district because the plaintiff's travel distance to the experts' office (56 and 57 miles) was shorter than the distance to plaintiff's treating physician (75 miles)). As such, Cora is ordered to appear in person at Dr. Cockerill's Chicago office for the Rule 35 examination.

## B. Vocational Expert Examination

Defendants propose that Purinton conduct a vocational interview and the following standardized tests: (1) WRAT-5 (a 15- to 45-minute examination assessing reading, spelling, and math skills); (2) Beta-4 (a 30-minute examination assessing adult cognitive abilities in coding, picture completion, clerical checking, picture absurdities, and matrix reasoning); and (3) COPSystem VIA (a 90-minute examination consisting of three surveys measuring values, interests, and abilities). (R. 80, Defs.' Mot. at 1; R. 88, Defs.' Reply at 3.) Defendants assert that Cora's claim for lost income places her physical and mental condition at issue, and good cause exists for Purinton to rebut Cora's vocational expert's opinion regarding her capacity for alternative employment. (R. 80, Defs.' Mot. at 2-3; R. 88, Defs.' Reply at 2-4.)

Cora opposes Purinton's proposed examination, arguing that Rule 35 authorizes only physical or mental examinations, not vocational assessments, and even if it did, Purinton is not qualified to administer the proposed tests. (R. 81, Pl.'s Resp. at 2-3.) She further claims that no good cause exists for Purinton's

examination because he can review documents produced in discovery and render opinions without conducting tests that are needlessly cumulative of Dr. Cockerill's psychiatric examination. (Id. at 3-4.)

The court rejects Cora's argument that vocational examinations are not within Rule 35's scope. While Rule 35 does not explicitly list "vocational" examinations, it authorizes a physical or mental examination when the plaintiff has placed those conditions in controversy. *See* Fed. R. Civ. P. 35(a). Here, Cora placed her physical and mental condition in controversy by claiming lost income and presenting expert testimony indicating her mental injuries prevent her from obtaining employment in law enforcement or commensurate employment. (See R. 77, Defs.' Sealed Mot., Ex. E, Wheeler Rep. at 16); *see also Trokey*, 2006 WL 726245, at *1 (permitting Rule 35 vocational examination because the plaintiff's "physical condition and resulting ability (or inability) to work are in issue"); *Scheriff v. C.B. Fleet Co.*, No. 07 CV 873, 2008 WL 2434184, at *1 (E.D. Wis. June 16, 2008) (permitting Rule 35 vocational examination where the plaintiff claimed lost earning capacity because of physical and mental injuries); *Bennett v. Remco, Inc.*, No. 22 CV 213, 2023 WL 11158883, at *2 (N.D.W. Va. Aug. 10, 2023) (permitting Rule 35 vocational examination and finding in controversy the plaintiff's lost future wages and earning capacity); *Hatfield v. W. Trails Charters & Tours LLC*, No. 20 CV 435, 2021 WL 1720921, at *2 (D. Utah April 30, 2021) (same) (collecting cases). Because Purinton's examination will assess Cora's mental capacity to secure alternative employment relevant to her lost income claims,

13

his vocational examination falls with the scope of Rule 35.[2] *See Canania v. Dippold*, No. 22 CV 2421, 2024 WL 3965584, at *8 (S.D. Ill. Aug. 28, 2024) (finding vocational examination within Rule 35's scope because "[t]he fact that this examination is meant to assess [the plaintiff's] vocational abilities does not change the fact that the examination itself is physical and psychological in nature").

Having found Cora's mental condition in controversy, the court next finds that good cause exists for Purinton's vocational examination. Courts in this district have found good cause for Rule 35 examinations to rebut opposing expert testimony even when the plaintiff's expert did not conduct an examination. *See, e.g.*, *Haymer*, 2013 WL 657662, at *4 (finding good cause for Rule 35 mental examination to rebut the plaintiff's expert testimony on their mental condition where that expert did not examine the plaintiff). Good cause is even more apparent for Purinton's examination because Cora has proffered expert vocational testimony that relied on documents and Wheeler's personal interviews with Cora. While Cora is correct that Purinton has access to other materials to help him form his opinions, (R. 81, Pl.'s Resp. at 3-4), he should be afforded the same opportunity as Wheeler to interview Cora. *See, e.g.*, *Guzman*, 2025 WL 3852267, at *3 (finding good cause for Rule 35 vocational examination to rebut the plaintiff's vocational expert testimony, which relied on the expert's own examination over the plaintiff's objection that no good cause existed

---

[2] Cora relies on *King v. Deming*, 19 CV 30018, 2020 WL 4369702 (D. Mass. July 30, 2020), to argue that Rule 35 does not authorize vocational examinations, (R. 81, Pl.'s Resp. at 3). But the *King* court never reached the issue of whether Rule 35 allows for vocational examinations because it found that the defendants failed to show good cause for the proposed examination. 2020 WL 4369702, at *2.

because the defendants' expert had access to the plaintiff's medical records); *Wegner v. Dahlquist*, No. 14 CV 1623, 2015 WL 4197081, at *2 (D. Colo. July 13, 2015) (same); *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 663 (D. Kan. 2011) (finding good cause for Rule 35 vocational examination to rebut the plaintiff's expert vocational testimony, which relied on testing to conclude that the plaintiff lost income due to mental injuries).

The court specifically finds good cause for Purinton's proposed standardized testing and deems him properly credentialed to administer it. As an initial matter, the tests Purinton proposes bear on Cora's mental capacity for certain employment because they assess job-related tasks such as reading, spelling, and math skills (*i.e.*, WRAT-5), cognitive abilities (*i.e.*, Beta-4), and values, interests and aptitude (*i.e.*, COPSystem VIA) relevant to her claims for lost income because of employment limitations. (See R. 88, Defs.' Reply at 3.) Courts have permitted vocational experts to administer standardized tests to assess employability when vocational capacity is at issue. *See, e.g., Hatfield*, 2021 WL 1720921, at *2 (permitting Rule 35 vocational examination that included standardized tests assessing clerical skills, career aptitude, career interest, and dexterity where the plaintiff put vocational abilities in controversy); *Bradley v. United States*, 619 F. Supp. 3d 141, 166 (D.D.C. 2022) (permitting the plaintiff's vocational expert to testify regarding results from WRAT, Beta-4, and COPSystem VIA assessments to demonstrate reduced annual earnings and earning capacity); *Jackson v. Low Constr. Grp.*, LLC, No. 19 CV 130, 2021 WL 785329, at *6 (S.D. Miss. March 1, 2021) (denying motion to exclude the plaintiff's

15

vocational expert's opinions that relied on COPSystem VIA assessment); *Tinson v. City of Coatesville*, No. 07 CV 3649, 2008 WL 11515738, at \*3 (E.D. Pa. Dec. 18, 2008) (permitting expert vocational testimony regarding results from WRAT and COPSystem VIA assessments in employment discrimination dispute). Further, neither Cora's treating professionals nor Wheeler conducted comparable standardized tests assessing her vocational capacity. (See R. 80, Defs.' Mot. at 4; R. 88, Defs.' Reply at 3-4); *see also Walti*, 2011 WL 3876907, at \*3, \*5 (permitting standardized testing in Rule 35 mental examination because no comparable testing had been administered and the defendant's expert was entitled to rebut the plaintiff's expert's conclusions); *Haymer*, 2013 WL 657622, at \*4 (same); *Hatfield*, 2021 WL 1720921, at \*2 (permitting standardized testing in Rule 35 vocational examination because this testing differed from previously administered examinations).

Finally, the court finds that Purinton is qualified to perform Cora's vocational examination. Rule 35 provides that the court may order a physical or mental examination by a "suitably licensed or certified examiner," Fed. R. Civ. P. 35(a)(1), but imposes no other requirements for examiner selection. However, an advisory committee note to the rule is instructive, as it contemplates that examinations may be conducted by "certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of the dispute." Fed. R. Civ. P. 35 advisory committee's note to 1991 amendment. Purinton is a Licensed Professional Counselor and has received board

16

certifications from the National Board for Certified Counselors, Commission for Rehabilitation Counselor, and American Board of Vocational Experts, among others. (See R. 77, Defs.' Sealed Mot., Ex. B, Purinton Curriculum Vitae at 1-2.) Purinton also holds a Master of Science in Vocational Rehabilitation Counseling and has testified as a vocational expert in more than 3,000 Social Security disability hearings. (See id.) He is therefore a "certified or licensed professional" qualified to opine on Cora's vocational capacity and employability. *See Canania*, 2024 WL 3965584, at *9 (finding Purinton "suitably credentialed" to conduct Rule 35 vocational examination); *see also, e.g.*, *Trokey*, 2006 WL 726245, at *1 (finding vocational expert qualified to administer Rule 35 examination because the expert was a licensed Clinical Professional Counselor and board-certified rehabilitation counselor with a Master of Education in Rehabilitation Counseling). This qualification extends to administering the standardized WRAT-5, Beta-4, and COPSystem VIA tests, which vocational experts routinely administer.

Cora's assertion that Purinton's standardized testing is cumulative of Dr. Cockerill's psychiatric examination is not persuasive because the experts will administer different tests, and their assessments and conclusions will vary substantially based on their respective fields of expertise. More specifically, Purinton will rely on his counseling and rehabilitation expertise to conduct a vocational interview and administer standardized tests (*i.e.*, WRAT-5, Beta-4, COPSystem VIA) to assess Cora's vocational capacity, while Dr. Cockerill will rely on his medical expertise to conduct a psychiatric interview and administer a test (*i.e.*, CAPS-5) to

17

assess Cora's mental symptoms and injuries. The difference in the experts' respective fields and testimony scope will necessarily yield different opinions such that Purinton's examination will not be cumulative of Dr. Cockerill's. *See, e.g.*, *Canania*, 2024 WL 3965584, at *9 (finding a Rule 35 vocational examination not cumulative of another expert's examination because the experts' fields and diagnostic practices differed). And for the reasons explained above in connection with Dr. Cockerill's psychiatric examination, Cora is ordered to appear in Purinton's Chicago office for her Rule 35 examination.

## Conclusion

For the foregoing reasons, Defendants' motion to compel is granted and the proposed Rule 35 examinations may take place in person in Chicago.

**ENTER:**

_____

**Young B. Kim
United States Magistrate Judge**